The opinion of the court was delivered by
Spencer, J.
In the spring or early summer of 1876 the firm of D. *944 Hiller & Co., of Canton, Miss., being largely in debt to Meyer, Weis & Co., of New Orleans, sent an agent or partner to New Orleans with instructions to negotiate a further advance of $2000 by Meyer, Weis & Co., to enable said firm of Hiller & Co. to go on with its business. This agent or partner, Levy, effected an arrangement with Meyer, Weis & Co. to this effect, to wit: That Meyer, Weis & Co. would advance D. Hiller & Co. $2000 additional, taking their note, due December 4, following, and secured by the note of one Keiffer, due in February following, for same amount, as collateral; said D. Hiller & Co. promising to ship cotton to sufficient amount on or before maturity of said note, and during the season, to cover it, they having the privilege of drawing for cotton purchases on Meyer, Weis & Co. from time to time, against the cotton shipped, but to leave margins sufficient to meet the said advance of $2000 on or before its maturity, December 4,1876. From August, 1876, to January, 1877, many shipments were made, and many drafts drawn by Hiller & Co. on Meyer, Weis & Co. These drafts were fifty-seven in number, and were all drawn in favor of Helm’s Bank, of Canton, which was induced, as its cashier swears, to cash all these drafts of Hiller & Co. upon their representation that Meyer, Weis & Co. had agreed to pay all drafts drawn by them in favor of said bank for cotton bought and consigned to Meyer, Weis & Co.
On January 11,1877, Hiller & Co. shipped from Forrest, Miss., eight bales of cotton ; on January 12, from same place, one bale cotton, and on January 16, from same place, seventeen bales of cotton ; in all twenty-six bales. These shipments were for account of the shippers, and consigned to Meyer, Weis & Co. On January 11, Hiller & Co. by letter advised Meyer, Weis & Co. of the shipment of the first nine bales, and on the sixteenth January by another letter they advised the shipment of the seventeen bales. In these letters there'is nothing said of any draft being drawn against said shipments. But on the eighteenth January, Hiller & Co. drew a draft on Meyer, Weis & Co. in favor of Helm’s Bank for $1540, and in a letter of that date say they inclose bills lading for the twenty-six bales shipped from Forrest for their own account, and advise that they have drawn said draft against said shipment.
Meyer, Weis & Co. received and sold the cotton, but refused to pay the draft drawn against it. Thereupon, plaintiff brings this suit, alleging in substance, first, that there was an express agreement between Meyer, Weis & Co., Hiller & Co., and the bank that the former would pay all drafts drawn by Hiller & Co. in favor of the bank for purchase of cotton. Second, that having been advised by letter of January 18, inclosing the bills of lading, of the drawing of said draft on the proceeds of said cotton, the receipt and sale of the cotton was an implied acceptance of and promise to pay the draft. Third, that Hiller & Co. *945 having paid for the cotton with the money received on the draft, Meyer, Weis & Oo. are liable for money had and received for their use, etc., and, fourth, that the bank took the draft entirely on the faith and credit of Meyer, Weis & Co., who had always paid promptly the drafts of Hiller & Oo. for like purposes.
The defense is a general denial, and that defendants had the privilege of factor and consignee upon said cotton, to secure the advances made upon it as well as the amount due as balance on previous account.
As regards the first proposition of plaintiff, that there was an express agreement between Meyer, Weis & Oo., Hiller & Oo., and the bank, it is certainly not sustained by the evidence, which conclusively shows that Meyer, Weis & Oo. knew nothing about Helm’s Bank; that in the arrangement with Hiller & Co. nothing was said about it, or concerning it. We are satisfied that Meyer, Weis & Oo. made no such agreement. Levy, the agent of Hiller & Co. in effecting this arrangement with Meyer, Weis & Oo., swears there was no mention of Helm’s Bank. Keiffer, the surety of Hiller & Oo., states the same; Meyer and Weis the same. The only witness who swears that there was such an agreement is Daniel Hiller, who was not present when the arrangement was made with Meyer, Weis & Oo. by Levy, and is evidently swearing recklessly. The cashier of the bank swears that Hiller told Mm there was such an agreement, but knows nothing of his own knowledge. There is no doubt that Hiller so informed the cashier, but that does not bind Meyer, Weis & Co.
Second. As to the implied promise resulting from the acceptance of the consignment, and the sale of the cotton.
There can be no doubt of the correctness of the general proposition that a consignee who accepts a consignment, with the advice and notice that the consignor had drawn on him for a stated amount against the goods consigned, impliedly promises to accept and pay the draft, and on refusal may be sued as for breach of contract. But that is not the case here presented. There are other circumstances which we think render that rule inapplicable.
In the first place, Meyer, Weis & Co. had advanced $2000 to Hiller & Oo. on the promise of re-imbursement by those shipments of cotton during the season. In the second place, those shipments were made “for account of the consignor,” without qualification. In the third place, the shipments were made on the eleventh, twelfth, and sixteenth January, and letters of advice of these shipments, dated January 11 and 16, were forwarded, and still no mention of any drafts against them. It was only on the eighteenth of January that the draft was drawn, and a letter written advising it, and inclosing bills lading (which for aught that *946 appears may have been duplicate bills). In the fourth, place, article 3247 of the R. C. C. provides that “ every consignee or commission, agent who has made advances on goods consigned to him, or placed in his hands to be sold for account of the consignor, has a privilege for the amount of these advances * * * on the value of the goods if they are at his disposal in his store, or in a public warehouse, or if before their arrival he can show by a bill of lading, or letter of advice, that they have been despatched to him.” Meyer, Weis & Co. had advanced $2000 on these promised shipments; that advance was wholly unpaid; they had received letters of advice of the shipment before they had any knowledge of the draft. We think, too, that it fairly results from Meyer’s testimony, and other circumstances, that they had received, also, duplicate bills of lading by railroad before those mentioned in Hiller & Co.’s letter of January 18. He says they received these bills of lading before the draft came to hand, and that the letters of advice of January 11 and 16 were the first received relating to twenty-six bales of cotton.
The privilege of Meyer, Weis & Co. as consignees and factors had, therefore, fully attached to this cotton, and Hiller & Co. could not thereafter defeat it by drawing drafts against the same. This view of the case renders unnecessary any discussion of the question as to how far a consignor who is indebted to consignee for advances on promised shipments of goods can while shipping for Ms oion account encumber the goods by notice of drafts drawn against them. It is easy to see that this question is a very different one from that where this previous relation of debtor and creditor does not exist. It may well be doubted whether any thing short of negotiation of the bills of lading with the draft, or a designation in the bill that the shipment is for account of the holder of the draft, would defeat the privilege of the consignee for advances. But we do not find it necessary to pass upon this point, and, therefore, express no opinion upon it.
Third. Under the view we have taken it is matter of no moment whether Hiller & Co. paid for the cotton with money obtained from plaintiff or not. That fact, if true, gives no claim either 'upon the cotton itself, its proceeds, or upon Meyer, Weis & Co. If the cotton were in Hiller & Co.’s hands, it would not even give plaintiff a privilege upon it.
Fourth. As to the plaintiff’s bank taking the draft upon the faith and credit of Meyer, Weis & Co., it is enough to say that that firm is not responsible for Hiller’s misrepresentations, and that there is outside of Hiller’s own testimony (which we do not credit) no evidence whatever of any act or declaration of Meyer, Weis & Co. to justify such faith and credit being given. The fact that they were in the habit of *947 paying similar drafts for Hiller & Co. could not, in the absence of an express or implied agreement, compel them to continue to do so.
In conclusion, it is manifest that there is no question here as to the necessity of Meyer, Weis & Co. recording their privilege; first, because plaintiff is not claiming the cotton itself, or any privilege upon it or its proceeds. Second, because Meyer, Weis & Co. have the cotton or its proceeds in their own possession, and if there is any claim against them, it is simply for an ordinary money debt.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and reversed, and it is now ordered that there be judgment for defendant, rejecting plaintiff’s demands, with costs of both courts.